Per Curiam.
 

 It appeared from the evidence in this cause, that William Clark, of Washington County, about the year 1807, being seised and possessed of 300 acres of land in said county, and four negroes, conveyed the land to his son Henderson, by deed dated in the month of April in said year, and the negroes also by a bill of sale of the same date. At the same time, Henderson executed to his father two notes, one in the sum-of $1,980, the other in the sum of fl,670. The father was then an old man, of the age of 76 years
 
 *20
 
 had a numerous family, who were all married and had left him, except the * said Henderson and another son, William, then unmarried, and a daughter named Ruth; that he had given some property, more or less, to all his children who had left him, though the quotas of each were very unequal and much inferior to that contained in the above deed and bill of sale, which he had reserved for his younger children, Henderson, William, and Ruth, above-named. These were the children of his second wife, Nancy, still living. They always lived with him and were very industrious. They labored on the farm, raised the stock, and transacted the business for many years, the father being very infirm for a long time and unable to attend to it himself. He intended the said lands and negroes to be equally divided, or nearly so, between his two sons Henderson and William, except a negro or two to his daughter Ruth. He conveyed the whole to Henderson, because at this time a suit for a tort depended against William, in which damages, he was afraid, might be recovered that might endanger the property, upon an agreement that the said Henderson should afterwards convey to William his equal share. The notes were given to the old man to secure a maintenance to him and his_ wife, their mother, during their lives, and also to secure the conveyance to William of his share. This division of the property appeared by frequent declarations of the old man both before and after the execution of the deeds, and also by a will made and executed in 1803, wherein nearly the same dispositions were made. His children while they lived with him, both sons and daughters, had their stock respectively, which they raised on the plantation. He was not indebted at the time of making these deeds, or at any other time. About a year before he died his mind became much impaired, and at times he was out of his senses. About a year after the execution of the above deeds, Henderson conveyed to William his share of the lands and negroes in consideration of the promise made to his father, and the * further consideration of William’s undertaking to pay him an equal part of the expense of maintaining their parents, as aforesaid ; and thereupon, in consideration of the same, and that Henderson would maintain his parents, his father gave him up the notes aforesaid to be cancelled. Henderson supported his. father and mother decently till the father’s death, and continues to support his mother according to his undertaking. The stock on the land so conveyed at the time of the death
 
 *21
 
 of the father, was worth between one and two thousand dollars. No will was proved or administration granted. The plaintiffs are the children of the first marriage, and their representatives, and claim a share of the stock aforesaid and the notes aforesaid. At the time of the execution of the deed in 1807, and from thence to about one year before he died, the old man possessed his understanding as well as ever he did; and at that time the stock or perishable estate on the plantation, except a few articles, belonged to Henderson and William, which stock they continued on it for seven years after, when the land and negroes belonged to them. As to the articles which did not belong to them, they do not claim them, and are willing that any one having authority may take possession. The bonds or notes given for the land are said by the defendants to have been given up to them when the purpose of taking them was answered, by conveyance of his share of the lands to William, who in the lifetime of the old man, as spoken of by him, agreed to be one half the expense of his and the mother’s maintenance for their lives, and afterwards gave $500 to Henderson to take upon himself the burden of the execution of his, William’s, part of this agreement. They now produce in court the bonds which they say were thus given, from all which circumstances the court infers the statement to be true. The first question is, what is to be done with these bonds ? The second is, what is to be done with * the stock on the plantation in 1807 and 1814, claimed by the plaintiffs as part of the intestate’s estate ? Thirdly, what is to be done with the articles not claimed by the defendants, and by them admitted to be a part of his estate ? First, then, the bonds or notes being intended only as the means of securing a conveyance by Henderson of William’s share, and of securing an undertaking by both to maintain the parents, and both these objects having been attained, the bonds have answered the end of their creation, and ought to be retained in the possession of those upon whom they were intended to be obligatory. Secondly, as to the stock, it was not the intestate’s. Thirdly, as to the articles not claimed by the defendants, they ought not to be provided against in this suit, nor until an administrator is appointed.
 

 Bill dismissed.
 

 See King’s Digest, 6589.